The Honorable Cliff Hoofman State Senator P. O. Box 1038 North Little Rock, Arkansas 72115
Dear Senator Hoofman:
This is in response to your request for an opinion on several questions involving the Arkansas Water Well Construction Act, ("Act") which is codified as Arkansas Code of 1987 Annotated 17-43-01 et seq. The questions have been restated and addressed in the order presented.
1. Does Act 641 of 1969 with amendments by Acts 80 of 1979, 521 of 1981, 822 of 1985, 783 of 1985 and 693 of 1987, have the authority over engineers who are lawfully practicing under their own statute (Ark. Stat. Ann. 71-1001 and 6-701 et seq.)?
The answer to this question is, generally, yes with respect to those person[s] engaged in activities falling within the scope of the Water Well Construction Act. See 17-43-107. This Act contains no general provisions exempting registered engineers from its requirements, nor can the statutory provisions governing engineers be construed to extend such an exemption. See A.C.A.17-27-101 et seq.
2. How can an amendment be made to Act 641 with language similar to the following?
"The practice of any engineering profession for which a license is required under any other law of this state shall be exempt; especially the practice by registered professional engineers lawfully practicing soil mechanics and foundation engineering, geological engineering and geotechnical engineering."
A.C.A. 17-43-108 (Supp. 1987) states in pertinent part as follows:
 (a) Where the Commission finds that compliance with all requirements of this chapter would result in undue hardship, an exemption from any one (1) or more such requirements may be granted by the commission to the extent the exemption can be granted without impairing the intent and purpose of this chapter.
While the Commission does not have the authority to amend the Act, the foregoing indicates that it may grant exemptions upon a finding of "undue hardship." Such a finding must, of course, be based upon a factual determination. However, it is my opinion that an exemption for "the practice of any engineering profession for which a license is required under any other law of this state" would be deemed to exceed the intended scope of 17-43-108. Thus, it may be concluded that this type of amendment must be effected through the legislative process.
3. Does the installation of piezometers (observation wells) which are engineering devices constitute the practice of "Water Well Construction" under Act 641 of 1969? If so, in what regard?
A.C.A. 17-43-107, which sets forth the scope of the Arkansas Water Well Construction Act, conditions the construction, repair, or abandonment of "any water well" upon compliance with the Act and rules and regulations adopted pursuant thereto. A.C.A. 17-43-104 (Supp. 1987) states that "it shall be unlawful . . . for (a)ny person to engage in the construction, alteration, repair, or installation of a water well, unless the work is performed under the supervision of an individual licensed or certified by the commission in the construction, alteration, repair, or installation of water wells and pump equipment" The question, therefore, is whether the "installation of piezometers (observation wells)" constitutes the "construction, alteration, repair, or installation of a water well" for purposes of the Water Well Construction Act.
A "water well" has been defined by the General Assembly under this Act as:
 . . . any excavation that is drilled, redrilled, cored, bored, washed, driven, dug, jetted, or otherwise artificially constructed for the purpose of locating, acquiring, diverting, or artificially recharging ground water. This term shall include excavations made for the purpose of exchanging the geothermal energy found in the earth as defined in subdivisions (8) of this section as heatpump wells but shall not include an excavation made for the purpose of obtaining or prospecting for oil, natural gas, minerals, or products of mining or quarrying or for inserting media to repressure oil or natural gas-bearing formations or for storing petroleum, natural gas, or other products.
A.C.A. 17-43-103(5) (Supp. 1987)
A "Water well contractor" means:
 . . . any person who engaged in the business of constructing, altering or repairing any water well or the installation of pumping equipment, exclusive of surveying or other acts preparatory to the construction of a water well.
A.C.A. 17-43-103(6) (Supp. 1987).
Applying these definitions, it appears that the installation of a piezometer may constitute the construction or installation of a "water well" within the meaning of the Water Well Construction Act. It seems clear from a review of the materials attached to your request that a piezometer is used to locate and make studies of ground water. This function arguably brings it within the definition of a "water well" under the Act. The publication entitled "Geotechnical Engineering Investigation Manual" by Roy E. Hunt states the following on p. 279 with respect to "PORE-WATER PRESSURES (PIEZOMETERS)" under "Applications and Summary":
 Piezometers are used to monitor water levels (static, perched, artesian) for excavations, slopes, and dam embankments, to measure excess hydrostatic pressures beneath dams and embankments, and to aid in control of preloading operations and placement of fill over soft ground . . . . Piezometers are divided into open systems, in which measurements are made from the surface, and closed systems, in which measurements are made remotely and the water level may be at any location.
It seems that piezometers are used in large part to register variations in water pressure. It is stated in "Foundations, Retaining and Earth Structures," by Gregory P. Tshebotarioff, on p. 271 that "a standpipe with a porous tip to keep the soil out is used to measure pressure. Such a standpipe is referred to as a `piezometer', and operates by converting pressure head to the more readily measurable elevation head. The total head then is read simply as the height to which water rises in the piezometer tube compared to some reference level." The following statement should also be noted in connection with the dewatering of excavations:
 The construction of foundations below the water table requires special consideration. The dewatering system should be designed to keep the excavation under dry conditions 24 hours a day. For deep excavations like those necessary for compensated foundations, water extraction must be carefully controlled to comply with design conditions. For this purpose, piezometers are installed in sufficient number at various depths to detect the important piezometric water level changes and be able to control by means of pumping from deep water wells the stability of the foundation excavation.
"Foundation Engineering for Difficult Subsoil Conditions" by Leonardo Zeevaert, p. 476.
The purpose of a well-point-type piezometer (observation well) is also indicative of the fact that piezometers are used to locate ground water. The publication entitled "Field Permeability Determination" by Edward K. Anderson (UALR Graduate Institute of Technology, spring 1970) states in pertinent part as follows on p. 11:
 The purpose[s] of the observation wells were: (1) To establish the ground-water table profile before beginning of the pump test. (2) To observe and measure the elevation of the ground-water table at various stages of pumping so that the drawdown curve could be plotted.
It may be concluded from the foregoing that the answer to your third question is yes, to the extent installation of piezometers involves an "excavation that is . . . constructed for the purpose of locating . . . ground water." A.C.A. 17-43-103 (Supp. 1987).
 4. If we are not "water well contractors" can we be licensed as such under Act 641 of 1969?
A.C.A 17-43-305 (Supp. 1987) sets forth provisions governing application for and issuance of water well contractor licenses.17-43-305(a)(1) states that persons properly making application shall be licensed. A.C.A. 17-43-305(a)(2) should also be noted wherein it is stated that "no person shall be licensed as a water well contractor who is neither a certified water well driller nor employs a certified water well driller." Registration as a water well driller is governed by A.C.A. 17-43-301 (Supp. 1987).
5. What course of action should geotechnical engineers take as a result of the opinion rendered?
It must be noted in response to this question that while the Attorney General is required under A.C.A. 25-16-706 to provide his opinion to the General Assembly on the constitutionality of proposed bills, he is precluded from engaging in the private practice of law. A.C.A. 25-16-701. Necessarily, therefore, this opinion is not provided for the benefit of private third parties, nor should it be relied upon or offered for that purpose.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.